AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

9 ELECTRONIC DEVICES, CURRENTLY LOCATED AT DAYTON FBI OFFICE,
7747 Clyo Road, Dayton Ohio 45459

Case No. 3:22MJ011

## APPLICATION FOR A SEARCH WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
SEE ATTACHMENT A

located in the  Southern  District of  Ohio , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & 846 | Conspiracy to possess with intent to distribute controlled substances |
| 21 U.S.C. § 843(b) | Use of a telephone communication facility to facilitate a drug trafficking crime |
| 21 U.S.C. § 856 | Maintaining a drug premises |
| 18 U.S.C. § 924(c) | Use and carrying of a firearm during and in relation to a drug trafficking crime |
| 18 U.S.C. § 922(g) | Felon in possession of a firearm |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Robert M. Buzzard*
Applicant's signature

SA Robert Buzzard, FBI
*Printed name and title*

Sworn to before me and signed in my presence via facetime.

Date: 1/11/22

*Judge's signature*

City and state: Dayton, Ohio

Sharon L. Ovington, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 9 ELECTRONIC DEVICES, CURRENTLY LOCATED AT **DAYTON FBI OFFICE**, 7747 Clyo Road, Dayton Ohio 45459 | Case No. 3:22MJ011 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **Robert M. Buzzard**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—the listed electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent (SA) with Federal Bureau of Investigation (FBI), and have been so employed since January of 2002. I am currently assigned to the Cincinnati Division, Dayton Resident Agency. As such, I am charged with investigating crimes against the United States of America, including but not limited to violations of Title 18 and Title 21 of the United States Code (U.S.C.). I have received training in drug trafficking investigations and participated in numerous narcotics-related investigations (ultimately leading to successful prosecution) that involved surveillance, the execution of search warrants, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics. I am familiar

with federal drug laws, and am aware that it is a violation of Title 21, U.S.C., Sections 841(a)(1) and 846 to distribute and possess with intent to distribute controlled substances, as well as conspire to do the same. I am also aware through my training and experience that drug traffickers commonly use cellular telephones and electronic devices to facilitate their drug trafficking activities/crimes.

3. Along with other agents, task force officers, and law enforcement officials, I am currently involved in the investigation of drug trafficking and firearms offenses committed by Donque GAY and Marcel WALLACE – including violations of: 21 U.S.C. § 841(a)(1) (possession with intent to distribute controlled substances); 21 U.S.C. § 843(b) (use of a telephone communication facility to facilitate a drug trafficking crime); 21 U.S.C. § 846 (conspiracy to possess with intent to distribute controlled substances); 21 U.S.C. § 856 (maintaining a drug premises); 18 U.S.C. § 924(c) (use and carrying of a firearm during and in relation to a drug trafficking crime); and 18 U.S.C. § 922(g) (felon in possession of a firearm) (hereinafter and collectively "Subject Offenses"). I have personally participated in this investigation and have spoken to, as well as received information from, other agents and investigators participating in this matter. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have hearsay knowledge. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched are nine electronic devices, hereinafter listed as **DEVICE-1** through **DEVICE-9**. The Devices are currently located at the Dayton Resident Office of the FBI, 7747 Clyo Rd., Centerville, Ohio and further described as follows:

   a. **DEVICE-1**: black Alcatel cellular flip phone, IMEI: 015355000352246

   b. **DEVICE-2**: white Apple iPhone, IMEI: 356544109013588

   c. **DEVICE-3**: grey Apple iPhone, IMEI: 353027095403446

   d. **DEVICE-4**: black Apple iPhone, IMEI: 353071103140137

   e. **DEVICE-5**: gray Apple iPhone, IMEI:353234106275504

   f. **DEVICE-6**: pink & white Apple iPhone, IMEI: 355679075116477

   g. **DEVICE-7**: black Kyocera cellular flip phone, Model E: 4281, HEX:99000612390667

   h. **DEVICE-8**: black Samsung cellular flip phone, IMEI: 355831040769514

   i. **DEVICE-9**: black Alcatel cellular flip phone, IMEI: 015455000604487

(collectively, the "Subject Devices"). The Subject Devices are described in Attachment A, which is incorporated by reference.

5. I believe that there is probable cause to believe that evidence of the Subject Offenses will be found on the Subject Devices. The applied-for warrant would authorize the

3

forensic examination of the Subject Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On the evening of September 7, 2021, myself and other law enforcement officers, including Federal Task Force Officers, Dayton Police Detectives, and Patrol Officers, conducted surveillance in the area of North Salem Avenue, Dayton, Ohio. During that surveillance, Dayton Police Officers Michael Swartz and William Overholtz observed a gray Jeep Cherokee traveling northbound on Salem Avenue near Emerson Avenue. The Jeep Cherokee did not have a license plate in violation of state law and had illegal window tint. Officers Swartz and Overholtz pulled behind the vehicle in preparation of conducting a traffic stop and the vehicle sped up over the posted speed limit. Officer Swartz activated his emergency lights in attempt to stop the vehicle and the vehicle fled at a high rate of speed. At or near the intersection of Salem Avenue and Hillcrest Avenue, Dayton Police Sergeant Kyle Thomas successfully deployed stop sticks, which struck the driver-side front and rear tires. Despite striking the stop sticks, the Jeep Cherokee continued to flee the area. An Ohio State Highway Patrol Aircraft was able to track the vehicle and relay its location to surveillance units on the ground. On Old Barn Road in Trotwood, Ohio, the vehicle stopped. The driver, later identified as GAY, and the front seat passenger, later identified as WALLACE, exited the vehicle and fled on foot. Both were subsequently apprehended by Officers.

7. The Jeep Cherokee was found to be an entered stolen vehicle out of Michigan. A subsequent probable cause search of the vehicle was conducted by me and other law enforcement officers. I observed a clear plastic baggie containing a white chunky substance believed to be illegal narcotics in the center console portion of the vehicle in front of the gear shift. I observed

4

a second clear plastic baggie containing what appeared to be the same substance laying on top of the front passenger seat. I observed a black plastic bag on the front passenger floorboard that contained U.S. currency, a clear plastic baggie containing suspected crystal methamphetamine, and a digital scale with suspected drug residue. I observed a loaded Ruger 5.7 X 28 caliber handgun, serial number 641-33595, laying under the driver's seat. In the vehicle's glove compartment, I located medical discharge paperwork in the name of GAY and a prescription pill bottle for Doxycyc Mono in the name of GAY. I located a cellular flip phone (**DEVICE-1**) between the driver seat and center console and **DEVICE-2** on the front passenger floorboard.

8. Utilizing a Thermo Scientific TruNarc Narcotics Analyzer, I conducted a field test on the suspected narcotics found inside the vehicle. The contents of the baggie in the center console portion of the vehicle tested positive for the presence of fentanyl. The contents of the baggie on the front passenger seat tested positive for the presence of fentanyl. The contents of the baggie on the front passenger floorboard tested positive for the presence of methamphetamine. The two baggies of suspected fentanyl were subsequently analyzed at the Miami Valley Regional Crime Laboratory and found to be fentanyl with an approximate weight of 65.54 grams. The baggie of suspected methamphetamine was also submitted to the Miami Valley Regional Crime Laboratory and confirmed to be methamphetamine with an approximate weight of 44.06 grams. I know through my training and experience the amounts of narcotics seized are distribution quantities.

9. When officers apprehended GAY, he had two additional cellular telephones on his person (**DEVICE-3** and **DEVICE-4**) as well as the ignition key for the Jeep Cherokee. When officers apprehended WALLACE, he had approximately $8,000 in U.S. currency in his pants pocket along with two cellular flip phones and one cellular smart phone. An additional

cellular flip phone and a cellular smart phone were located on the ground where WALLACE was hiding when apprehended. The devices on or around WALLACE are identified as **DEVICE-5, DEVICE-6, DEVICE-7, DEVICE-8,** and **DEVICE-9.**

10. Following GAY'S arrest, he advised me that he was currently on probation for a pending gun case in Montgomery County Common Pleas Court. A review of GAY'S criminal record showed a pending Montgomery County Common Pleas Court case number 2020CR01384 wherein GAY pled guilty in 2021 to Improper Handling of a Firearm in a Motor Vehicle. Court records showed GAY was on active supervision in that matter through Montgomery County Division of Probation Services.

11. A criminal history search on WALLACE showed he had a prior state felony conviction in Montgomery County Common Pleas Court, case number 2012CR01937, for Aggravated Robbery with a Deadly Weapon and Felonious Assault. Additionally, WALLACE was convicted in Warren County Common Pleas Court, case number 2018CR34065, for Burglary (F2). WALLACE was on active supervision with Ohio State Parole for the Warren County, Ohio conviction at the time of this incident.

12. I believe concealed within the Subject Devices are the numbers associated with that cellular phone, names, text messages, voice mail messages, photographs/videos, contact numbers, addresses, related stored information, call logs, and any deleted information for individuals involved in the purchase, transportation, and/or distribution of illegal narcotics. Specifically, I believe the Subject Devices will contain names and phone numbers of co-conspirators (both drug suppliers and drug customers) in the contact list, calls to other co-conspirators in the call log and text messages to those same co-conspirators that can be used as evidence of possession with the intent to distribute and to distribute controlled substances and

6

conspiracy to do the same (21 U.S.C. § 841(a)(1) and 846) and use of a communication device to facilitate a crime (21 U.S.C. § 843(b)).

13. I believe the Subject Devices will contain the information listed above based upon law enforcement's observations of GAY and WALLACE on September 7, 2021 and the significant amount of drug trafficking evidence seized inside their vehicle. Further, based upon my prior training and experience in narcotics investigations, it is my considered opinion that individuals who engage in drug trafficking commonly utilize cellular telephones to generate and receive voice messages, text messages, WhatsApp messages by and between associates, colleagues, and co-conspirators and also to track and sell drug shipments. Those engaging in drug trafficking commonly use multiple cellular telephones to notify/alert co-conspirators of the arrival of a shipment, to arrange for its pick-up and to deposit money. It is often common for drug traffickers to have multiple phones because certain phones may be used only for certain purposes. For instance, a trafficker may use one phone just to speak to his supplier, while using a different phone to speak only to his customers. This is a counter-surveillance technique intended to make it harder for law enforcement to identify the user of the phones and his associates. Traffickers commonly use prepaid cellular phones to hide their identity as the user because they generate no billing information, often require little or no identifying information to activate, can sometimes be activated using an alias, and can be easily disposed of should the trafficker believe that law enforcement has identified the phone number.

14. I also know traffickers, using digital cameras located on their cellular phone or other electronic devices, will sometimes use these devices to take photographs or videos of themselves, their location, their product, their firearms or their associates, which can be electronically stored on, and transmitted from, these electronic devices. Information can also be

7

downloaded from the Internet onto the cellular phone or smart devices, such as email, social network information (like "Facebook"), travel information like maps or directions, or photographs.

15. I also know that drug traffickers often threaten violence or use force against their rivals as well as customers who, for instance, may owe them money. In doing so, drug traffickers often use electronic devices such as cellular telephones, smartphones, tablets, and the like, to send communications referencing violence, use or possession of firearms, or threats.

16. In this modern era, individuals also use smart telephones and smart devices to logon to online banking platforms. I know that drug traffickers often use banking services to transmit money to their domestic and international suppliers.

17. Based on my knowledge, training, and experience, I know electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. The Subject Devices are currently in the lawful possession of the FBI at 7747 Clyo Road, Dayton Ohio 45459. In my training and experience, I know the Subject Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into the possession of the FBI.

8

## TECHNICAL TERMS

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by

9

connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal

11

computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

i. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online, I know the Subject Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the

13

device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

14

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Subject Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Robert M. Buzzard
Special Agent
Federal Bureau of Investigations

Subscribed and sworn to before me
on January 11, 2022:

Sharon L. Ovington
United States Magistrate Judge

## ATTACHMENT A

The property to be searched includes:

    a. **DEVICE-1:** black Alcatel cellular flip phone, IMEI: 015355000352246

    b. **DEVICE-2:** white Apple iPhone, IMEI: 356544109013588

    c. **DEVICE-3:** grey Apple iPhone, IMEI: 353027095403446

    d. **DEVICE-4:** black Apple iPhone, IMEI: 353071103140137

    e. **DEVICE-5:** gray Apple iPhone, IMEI:353234106275504

    f. **DEVICE-6:** pink & white Apple iPhone, IMEI: 355679075116477

    g. **DEVICE-7:** black Kyocera cellular flip phone, Model E: 4281, HEX:99000612390667

    h. **DEVICE-8:** black Samsung cellular flip phone, IMEI: 355831040769514

    i. **DEVICE-9:** black Alcatel cellular flip phone, IMEI: 015455000604487

The Subject Devices are currently located at the FBI Office at 7747 Clyo Road, Dayton Ohio 45459.

This warrant authorizes the forensic examination of the Subject Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Subject Devices described in Attachment A that relate to violations of 21 U.S.C. § 846, 841(a)(1) (possession with the intent to distribute and to distribute a controlled substance and conspiracy to do the same) 21 U.S.C. 843(b) (use of a communication facility to commit a felony) and involve Donque GAY and Marcel WALLACE:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information recording GAY and WALLACE'S schedule or travel;

   e. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and

technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.